The next case on our call is Agenda Number 11, Case Number 109-156, K. Miller Construction Company v. Joseph J. McGinnis. Counsel, you can proceed when the courtroom is settled down a bit. You may proceed. May it please the Court, my name is Raymond Osler and I represent the homeowners, the defendants, Francis McGinnis and Joe McGinnis. We're here today to ask this Court to reverse in part and affirm in part the decision of the appellate court for the following three reasons. First, the appellate court erred when it held that the Home Repair and Remodeling Act was ambiguous. The plain language of the Act is not ambiguous and it does not give a contractor the right to charge the homeowner without a written contract. Second, the common law remedy of quantum error is repugnant to the Home Repair and Remodeling Act. Third, if quantum error claims are available to contractors who do not comply with the Act, the purpose and policy of the Home Repair and Remodeling Act is totally defeated. Turning to my first point, the language of the Act, when read in its entirety, bars all the relief for this contractor. The Home Repair and Remodeling Act first came to this Court's attention in the case of MD Electrical v. Abrams. While that case is factually different than the one we have today, this Court did examine the policy of the Act in that case and that policy is relevant to our discussion this morning. Section 5 of the Act states that policy and it states that the Act was passed in order to safeguard the property and welfare of Illinois citizens. The purpose was to provide the consumers with improved communication and accurate representations, and those are the phrases used in the section, by the persons engaged in home repair and remodeling in order to avoid the likelihood of the disputes such as the one we have with us here this morning. To accomplish the purpose of the Act, the General Assembly has made it mandatory that the contractor, that is the person most knowledgeable about the costs of the project that the consumer is going to undertake, that the contractor provide a written contract to the homeowner before the work begins. Mr. Ostler? Yes. Your client is an attorney, isn't that correct? He is. And a sophisticated person who should know that he should have a written agreement? Judge, there is nothing that delineates, as counsel argues, a sophisticated consumer versus a consumer. The Act makes no distinction among consumers, whether it's a lawyer, whether it's a judge, or whether it's another home improvement contractor, the Act still protects that consumer. And you argued that the General Assembly had an intention to make sure that the Act was abided by, isn't that correct? That's correct. Then why didn't they amend the statute of frauds to indicate that such contracts have to be in writing? Wouldn't that make it a little clearer? You mean if they hadn't done that amendment? Right. If, in fact, they had, but instead the General Assembly decided to enact the Home Repair and Remodeling Act to provide the remedies that are in that Act. But it's confusing. One has to be in writing and the other doesn't. It's not confusing when you read the Home Repair and Remodeling Act. I don't think there's any confusion at all. The Act specifically says that any agreement with the homeowner for work to be done and for more than $1,000 has to be in writing. The Act is very clear. Is there anything beyond Section 30 that supports the position that the Act meant to eliminate quantum theory? Yes, I think it does. It says that it is unlawful to charge the consumer. Anything beyond Section 30? The requirements of Section 15 of the Act also requires that there be a written document. If you have a written document, a written contract, you cannot have a claim for quantum heroin. So to that extent, a claim for quantum heroin is repugnant to the Home Repair and Remodeling Act. If you have a contract, you cannot have a claim for quantum heroin. If you do not have a contract, then it is unlawful to charge the consumer. Are you aware that there's before the legislature now a proposed bill that would eliminate that language of Section 30? I am aware of such an amendment pending, correct. And how does that impact your argument? It doesn't at all. That Act as proposed would only have prospective effect, not retroactive effect. But in indicating the intent of the legislature, how does that? It would indicate the intent of the current legislature, not the General Assembly, as of the date that this Act was put in place. And not to correct admission? No, there's no such indication in the amendment that this is to correct any problem with the current Act. None that I'm aware of. There's no allegation of fraud on the part of the contractor in this case? No. Similarly, there's no allegation by the contractor that there's fraud on the part of my client. Is there anything specific, any specific language in the statute that you can point to that indicates it tends to abrogate common law? That it tends to abrogate the common law? That it tends to abrogate common law on quantum merit? I believe the language in Section 30 is clear. Section 30 says it is unlawful to charge a consumer. Charging a consumer by quantum merit is exactly that, charging the consumer.  Well, but quantum merit is an equitable doctrine that talks about recovering reasonable value of services and not allowing one party to benefit from the other party's misstep. It's not a contractual action. It is not. It's a quasi-contractual action, but it is by definition as much as he deserves, and then the additional part of that definition is for services performed. That is what the definition of charge, the verb charge is. It's to collect and demand payment for services rendered and goods provided, so that if you incorporate the definitions of those words into Section 30, it's clear that quantum merit, any common law remedy that will have the consumer pay for work done without the protection of a written contract is prohibited by Section 30. Is there any import at all, Mr. Osler, to the fact that in this particular case, it appears that from what was anticipated the price to be, some $185,000, that the cost was exceeded by about $400,000, right? I think that's exactly what the Act is designed to protect. The purpose of the Act is, again, to improve communication. Before you get into that, is there any dispute that the work done would be worth that amount of money? Yes, of course there is. I mean, there's no admission that that's the value that was put into this property. That's the allegation in the complaint. But, you know, is it disputed by the homeowner? Of course it is. The issue, though, is the Act is designed to provide to the homeowner the ability to understand and know and budget for its project, the homeowner's project. It's not the contractor's project. And if the homeowner is not afforded a written contract, which is now the General Assembly's requirement, that it provides with reasonable particularity the costs that the homeowner is expected to pay at the end of the project, then you've completely defeated the purpose of this Act. Were there a number of changes made to the, I know it's an oral agreement, but were there a number of changes made during the course of time as to what was going to be done? There were. So was it anticipated by the homeowner with change orders that the amount due at the end of the project might be more than the $185,000? No. This isn't a case where there were change orders provided in writing to the consumer that said this is how much you're supposed to pay. And there were no oral agreements that this is how much this change order is going to pay. There was simply no communication. And, again, that's what this statute is all about, communicating to the consumer in advance what you're going to be expected to pay. And in our case, there simply was no communication of what this consumer was going to ultimately be charged. No claimed oral communication? Pardon me? No claimed oral communication? There was at the very beginning, there was. But during the course of these change orders, there's no allegation that there was a statement by the contractor that said, if you want this done, you're going to be charged this much money. My counsel, going back to Justice Thomas's question, there was communication with regard to the change. I mean, it's one thing to have a pine door versus a walnut door put in, and your client must have known that one was going to be more expensive than the other, or a glass chandelier versus a crystal chandelier was going to be more. So, I mean, that kind of communication happened, didn't it? There was communication about, yes, authorization to do the change. Authorization. Yes, but there was no ‑‑ Should not your client be stopped from then asserting that he didn't know what, or they didn't know what the costs were going to be? No, because, again, the purpose of this act is to have the professional, the person who's knowledgeable about those costs, communicate those costs in writing to the consumer so that the consumer can be apprised of what it is going to have to pay when the project is done. That was not done here. So your argument would be, no, this was a three‑unit apartment building, right? No. It had been a two‑family, a two‑flat that was converted into a single‑family residence. Okay. Well, let's just say for purposes of argument that, and I'm just trying to understand your argument, let's say for purposes of argument that half of that was agreed orally to do at $185,000, and then the homeowner says, by the way, do the second unit, do the second floor. Your argument would be the same, that if that, forget a change order for a walnut door, your argument would be even if it was extensive work where the homeowner would have to know that the price would be different than initially agreed upon, he would have no obligation to pay under quantum merit because the contractor did not supply a change order. I think especially under those circumstances where the homeowner, who is not the professional, who is not the person that knows about the costs, comes to the contractor and says what you've indicated, double the size of this project. If that contractor doesn't explain to the homeowner what that cost will be, then it's a violation of this act. The General Assembly has enacted this statute for the protection of the consumers for themselves, for their benefit, so that they can put some fiscal control over a project so they can identify whether they have the wherewithal to proceed with such a more elaborate construction project in your example. That's what this is to do. If you don't have that protection, then the homeowner is working for the contractor. That's not what the statute is all about. The statute is to protect the consumer, to protect the homeowner, by providing the homeowner with knowledge and information about the cost of the project. It's the contractor who's the professional. It's the contractor who is aware of these costs, not the consumer, not the homeowner. When you go further, though, that would have to be in writing. For example, under my example, if the homeowner said, hey, you want to double the project, it's going to cost you double the amount. And if that was uncontroverted evidence, you would still take the position that the statute indicates that no writing, no money. That's exactly what the statute says. It is unlawful to charge the consumer unless there is a writing by the contractor or a work order from the contractor. That's what Section 30 says. Have you read the legislative history behind the statute? I have looked at the legislative history, yes. And it does concern itself with the student fraud, especially with respect to the elderly. So how can we conclude from looking at the legislative history that that's meant to abrogate the common law theory of uncontroverted evidence? First of all, the complete legislative history contains other responses to the intent of this act, such as, as I've just articulated, it's for the benefit of the consumers, how it is not an onerous request to have a contractor put it in writing before the project begins. That's also in the legislative history. Secondly, I think the language that's used in the act directly supports our position that it is unlawful for a contractor to charge a consumer without a written contract. There's no ambiguity in the language that's used. If you want to take the next step and look at the definitions of the words unlawful and charge and insert them into Section 30, and even quantum merit, take those definitions and insert them into Section 30, the result is exactly the same. Quantum merit is repugnant to the purpose and the policy of the Home Repair and Remodeling Act. It is unlawful to charge. Unlawful means not authorized by law. Charge means to demand payment for services rendered or goods provided. That's what quantum merit is. So when you insert those definitions into Section 30, then it remains clear that quantum merit is repugnant to the language that's used by the General Assembly. Mr. Osler, I think I read somewhere that these parties did have previous dealings. Yes. Mr. Osler, would a time and materials contract pass muster under this act where a contractor says I'll charge you an X number of dollars per hour and I'll charge you the cost of materials plus 10% with no figures in there as to what the ultimate amount would be? The language that's used in the statute is that there has to be a contract which states the total costs with reasonable particularity. If you have a time and materials contract that articulates what those costs were with as much of a reasonable particularity as possible, then I think it would pass muster under the act. I don't think there's certainly nothing inherent in the words that are used that precludes a time and material contract, but it still has to be a contract in writing that affords the consumer some knowledge, some understanding of what it is that consumer is going to be asked to pay at the end of the project. And without a written contract, without a written agreement, without any representation, that consumer is denied the opportunity to assert any fiscal control over its project. Again, it's not the contractor's project. It's the consumer's project. Counsel, was the original projected cost given in writing? No. And is there anything shown in the record or any significance to the fact your clients paid $65,000 or something like that, as I recall? Well, they paid $177,000-plus. There's $34,000 in subcontractor claims that they paid, and the allegation, which is correct, there's an additional $66,000 in subcontractor claims. Was there some point in time where they said they weren't going to pay any more until the project was completed? That's an allegation in the complaint, yes. Okay. But what does the record show? That's the allegation in the complaint. We're dealing with the Second Amendment complaint. And where does this $177,000 come in? Those were payments that were made over the term of the project. No, but I mean, is that in an answer or what? How do we have this in the record? That is an allegation in the complaint. That they paid $177,000? Yes. Mm-hmm. Were there any bills given to your clients? Through the $177,000 that was paid. So it outlined what was done in those bills, so your client would have some knowledge of what was being done so far, but also wouldn't your client have knowledge of what they talked about, what would be done in the future and could figure out what the cost might be? No. Again, the homeowner is not the contractor. The homeowner is not the professional in charge of the costs of the project. No, but based on what was already paid for by the homeowner. There's certainly nothing in the record that would indicate that the homeowner could have anticipated the final bill that they were given based on what work had been done in the past. It certainly is not in the record anywhere, and it would be just rank speculation to even suggest that that would be the case. In conclusion, the Home Repair and Remodeling Act, in our view, has a legitimate public policy. That policy is clearly expressed in the statute. It places a burden on the contractors to communicate to the homeowner the costs of the job in advance of the work. This is to be done in a written contract so the homeowner can't exercise some fiscal control over its project. The protection of the consumer is directly provided by the act, which makes it unlawful for the contractor to charge for the work without a signed agreement. In our case, there was a clear violation of every element of the contract. Section 20 of the act provides for a brochure for the homeowner that details what should be included in a contract, terms such as the commencement and completion date, a payment schedule. None of that was given to our client. There was no written agreement at any time to the homeowner during the course of this project. This was unlawful conduct by Miller as defined by the Home Repair and Remodeling Act. As a consequence, the act makes it expressly unlawful for the contractor to We ask this court to reverse the appellate court in its decision to overturn the dismissal of the Quantum Meroweth Claim and affirm the appellate court in the dismissal of the Contract and Mechanic Lien Claims. Counsel, before you leave the podium, I know your time is up. It's just up. Ask the question. If I read the briefs correctly, there was the dismissal of the Second Amendment Complaint and the appellate court affirmed in part and reversed in part. And the Second Amendment Complaint basically had three elements, the damages for breach of an oral contract, the Quantum Meroweth Theory, and then there was a lien on real property for labor and material. Is that the three? A Mechanic's Lien Claim, a Breach of Oral Contract, and the Quantum Meroweth Claim. And the part that was affirmed in part was what? The appellate court affirmed the dismissal of both the Mechanic Lien Foreclosure Count and the Breach of Oral Contract Count. Okay. Thank you. Counsel, if I may start you off with, and I'm going to let you tell us who you are first. Mr. Chief Justice, Your Honors, if it please the Court, Richard Stavins on behalf of the contractor of the appellate. Mr. Stavins, do you agree or disagree that the statute here, Section 30, is unambiguous? It is ambiguous. That word unlawful, in the context we're talking about, in this case, does the word unlawful abolish 200 years of the Doctrine of Quantum Meroweth? In fact, if we take it into English common law, which is a part of the law of the state under the Common Law Act, it goes back 400 years. Did that word absolutely, clearly, and unequivocally abolish that common law doctrine? And the answer is we cannot say that that word, that one word, is unambiguous in its abolition of that common law doctrine. It just isn't there. So that is an ambiguous statute. That one word is unlawful. The word is unlawful, is ambiguous, as to whether that word was intended by the legislature to abolish the common law doctrine of quantum meroweth. And if it's ambiguous so that it does not clearly and plainly abolish the common law doctrine of quantum meroweth, then it doesn't abolish the doctrine. Doesn't it just simply mean it's against the law? Unlawful, against the law? That's the way the dictionaries come out. Unlawful means against the law. Under 30, it is against the law for any person engaged in the business of home country. So it's unlawful. It's unlawful. Now, does that mean that's the question before the court? The ambiguity you're creating is saying even if it is against the law, you are still entitled to quantum meroweth for an act that is now against the law under a statute. That's the issue. And the answer, most respectfully, is that only if the legislature plainly and expressly repeals the common law doctrine is the common law doctrine abolished. That's a different question. Isn't that a different question? You're saying there has to be an express abrogation of quantum meroweth, right? We're opposing counsel to say, no, it can be implied, that the act implies that there's an abrogation of quantum meroweth. And this court has repeatedly said it can't be an implied repeal of the common law. There has to be a plain and express repeal of the common law. And the position of the owners is that the word unlawful, unlawful to charge, constitutes a clear, unambiguous repeal of the common law. And our position is absolutely it doesn't. Does there need to be an express abrogation when the common law here is wholly incompatible with the express and clear terms of the statute? If we indeed believe that it's pretty clear that the statute says it's unlawful to not have a written contract. Isn't that incomplete? Isn't that completely incompatible with quantum meroweth? No, I don't think it is. I come back to the same point of what does that word mean in the context of the common law doctrine? And it doesn't unambiguously repeal it. I'm sorry, Your Honor. Is it accurate that your argument in essence says quantum meroweth has been the law in Illinois for so long you cannot remove it with this simple phrase in the statute before us? That's correct. Neither can we do it nor did the legislature intend to do it. Maybe this is an unfair question and you can tell me if it is. Can you point to a statute that has ever held that a position that has been so long held in the law remains unless it's specifically removed? We cited several cases in our brief where this court has held over a period of more than 100 years that there has to be a plain and unambiguous statement of a case, the Blount case and others. And we don't have that here. So if we decide that it is unambiguous, we have no alternative but to rule in your proponent's favor, is that correct? If you believe that the legislature by the use of that word intended to repeal the common law doctrine of quantum meroweth, just by that one word intended to repeal 200 years of law, then the appellate court erred. And the opposite is true as well. Yes. If we believe it is unambiguous, we rule in your favor. Yes, and I may add, Your Honor, ambiguous on the question of whether the legislature intended to repeal. Intended to repeal. Yeah. Mr. Stevens, let's talk practicalities. In the law a lot we hear war stories, right, from judges and attorneys. So I've got one for you. All right. Sitting in the trial court, I can think of cases, just homeowner, contractor, no contract, right? Everybody's raising their right hand, taking an oath. Stories diametrically opposed as to what was agreed upon. Somebody's lying, right, and the judge has to make a decision. Isn't the purpose of this act, the purpose is to eliminate those type of things? The purpose of a writing is to try to do that. That's absolutely true, of course. And what about the fact in this case that I believe the statute, what was it, 2000 when it came out? I mean, there's no doubt that at least the contractor should have been aware of the statute, right? Yes. And what happened here was that you had, as Madam Justice Burke asked about, you had two people who had a preexisting friendship for which the contractor had previously done remodeling work at the owner's home at a different location. And this was going to be a job based on the time, the materials, the labor, and the services rendered. And his friend, the owner, an attorney, he thought would never do this to him. And what happened here was an outrage. He did all this work. It was vastly increased in scope during the term of the job. That's why there was such an increase in the amount of money involved. Alleged in the complaint, which the court must take as true for purposes of this appeal, the owners went through the property and inspected it, made periodic payments, found nothing wrong with the work except one $300 punch list item that was fixed up, told the contractor while he was working, we will finish paying you in full when you complete the job. He went out and he borrowed money. He did not get the periodic payments as our customary thing. Let me stop you for a minute. I am interested in this. But does the complaint allege anywhere as to the homeowner being aware of the amounts that it was increasing the job? Or did he not know until the end? The homeowner, according to the complaint, the homeowner had the architect go back and do vast changes in the plans. There were no plans and specifications. This was a huge increase in the work that was done. It was not, as was mentioned, a change in the style of the wood or the chandelier. This was a massive increase in the job. One of the things alone. I'm saying were the amounts ever communicated to the homeowner, the increase or a ballpark as to the increase? There's no allegation in the complaint one way or the other on that. So the owner tells the contractor, when this job is finished, you finance it, Mr. Contractor. But when this is finished, you will be paid in full. And then it's finished. To the owner's satisfaction, no complaints except for that little $300 punch list item that's fixed up. And then in the words of the concurring justice of the appellate court in the Fandel case that just came down from the third district, this was one giant gotcha. The owner said, sorry, you didn't have a writing. We won't pay you the remaining $326,000 that we owe you. And we don't have to. Even though I'm an attorney at law, I concentrate my practice in real estate. I've been a general counsel for a title insurance company for 10 years, the owner. But I don't have to pay you because you didn't get a writing from me. It's an outrage of what happened here. And the law of quantum narrow it for several hundred years has been designed to take care of that. And if the plaintiff can't prove the reasonable value of the services, then the plaintiff deserves to lose. My client deserves to lose if this case goes back and he can't prove the reasonable value of what he did. But I most respectfully submit that he certainly can. And it was just because they were waiting to catch this contractor with that statute that we're here today. That's the only reason. This wasn't a case of what the legislature was trying to get at, which was the fly-by-night contractor. The brochure says to consumers, beware of the contractor who comes around knocking on your door, wants to do some work. Beware of people like that. This wasn't what that was. These two fellows were friends for years, and they had a preexisting business relationship in this kind of work. This wasn't a fly-by-night contractor knocking on the door, trying to take advantage of a poor little old homeowner. This was the owner who outrageously took advantage of the contractor when he caught him for $326,000. That's what's going on here. But the question still remains, and it was Chief Justice Fitzgerald's question. I mean, if we can't agree that unlawful is ambiguous, and if we also find that there doesn't have to be an expressed abrogation with respect to quantum merriment, and it can be implied based on the unambiguous statute and the incompatibility of quantum merriment in the written contract, as Section 30 spells out, as egregious as it appears, is there any other argument that you make with respect to how we can find in your client's favor? Well, then the alternative is, because this comes up on the pleadings, and it comes up on alternative counts, count one is the action on the mechanics lien statute, which requires the existence of a statute. Count two is the breach of contract action, which requires the existence of a contract. And then count three is the quantum merriment action, which basically says there isn't a contract. We can still prevail on count one, that there was a contract. If the court believes that there was a contract here, that is not abrogated by the statute. You're asserting that under the Fandel case that there still is a violation, or it's unlawful not to have a contract under the HRAA, but the attorney general can still prosecute the contractor for violating that, for that violation, and that not getting a contract in writing, the homeowner can still bring a claim under the Consumer Fraud Act, but the underlying oral contract is not void. Is that what you're saying? That's what Fandel says? Fandel says, one part of Fandel says that there is no private right of action by the owner, and he can't raise it as a defense, and he can't raise it as an affirmative action. Enforcement is solely in the attorney general. So that this whole defense of the act falls. Do you agree with that? Yeah. Yes, I do. Now, interestingly, this should have been brought as a 2619A9 motion raising the statute. It was brought as a 2615, because I don't know if they were thinking in those terms that if they brought it as a 2619A9 that the statute is the affirmative defense, and it might raise this issue of whether there's a private right of action or not. And I think Fandel is right that enforcement seems to be solely in the attorney general, but the statute is not an affirmative defense. Indeed, the issue is under 2615, does the complaint plead a valid cause of action? And the answer is yes, it does. Now, if you raise the statute as an affirmative defense, if you can't raise the statute as an affirmative defense, because enforcement is solely in the attorney general and division, there is no defense then. I would also respectfully submit, respond to Justice Freeman's question for the epilogue about the bill pending before the legislature. It's pretty clear that the purpose of this bill that I think was introduced by the Illinois State Bar Association was to take care of this problem that we're seeing under this statute. The appellate court is in disarray trying to figure out what the statute means, what that word unlawful means and how to interpret it. Is there a private right of action? Is there not a private right of action? And if that bill passes, that's going to eliminate the problem here. Now, the impact it will have on this case, I don't know. That would depend on its effect on existing actions, so I don't know. But for the future, it's going to eliminate the problem here because it's going to take the word unlawful out of the statute and that's the end of the issue. So I think the legislature is pretty clear that it doesn't like what's going on if it passes the bill, that that's a pretty good signal that the legislature does not like the fact that the statute is kind of in a state of disarray in the appellate court. Is it also a signal, though, that it doesn't support opposing counsel's argument that quantum merit would not apply to the statute as it exists? Isn't that the problem that they've seen and they choose to perhaps correct it? I suppose one could interpret legislative intent in that manner, but I think the more reasoned interpretation would be that they're trying to get rid of the problem, which is the word unlawful as used in the statute. I believe that we have alleged pretty clearly in count three that there isn't the contract here. And I don't know if there was ever a meeting of the minds to create any contract. There's been some reference to it as an oral contract. But in count three, there is no allegation of a contract. There is just an allegation that the parties got together, he looked at the plans, he looked at the scope of the work, he was hired to do work, and he went to work. But was there a meeting of the minds on the price? I don't think so. And count three does not allege that there was a contract. So it's clearly the classic case for quantum merit. The work is undertaken. There is no contract. The work has substantial value, and it would be unjust to allow someone to benefit for that. That's exactly what the law of quantum merit was designed to take care of. So no further questions? Thank you very much, Your Honors. Thanks. The first point I'd like to make is counsel indicated that express repeal of the common law is required, and he cites to, he mentioned the Maximovic case. In that case, actually, the conclusion was that the common law remedy that was being advocated was going to be allowed to proceed because it was not, in the words of that decision, inextricably linked directly to the relief that's provided by the statute. Here, the common law remedy of quantum merit is directly related to what's being covered by the statute, and this Court has often ruled that you can repeal the common law by implication when the statute covers the same elements, and that's what we have exactly right here in the Home Repair and Remodeling Act. Secondly, counsel, again, disparages the McGuinnesses by claiming, he brings up the gotcha phrase that came up from the concurring opinion in Fandel. It's a complete red herring. There is absolutely nothing contained in the complaint, not the first count, not the second count, not the third count, that would indicate any impropriety by my clients. Yet he brings this up in his briefs. It's the biggest of red herring to inflame the passions of this Court. Miller is guilty of no unlawful conduct. The contractor is guilty of unlawful conduct as defined by the Act. If, in fact, there were these serious problems that is intimated in the briefs, then I would invite the contractor to bring a separate claim or cause of action for fraud if he thinks that there is such a thing. There isn't, there wasn't, and that's why there is no claim, there is nothing in the second amended complaint about any such conduct. And so to bring it up in his brief and in his arguments, I think, is wholly improper and unnecessary. Secondly, about whether or not. What about the inference from the fact that the contractor financed to the tune of an extra $300,000, $400,000? The allegation is that he had to take out a $150,000 loan. I think the more appropriate question is, why didn't the contractor make a demand for payment before he expended any additional funds? Why didn't the contractor provide to the consumer a statement in writing that this is what was going to be, this is what the project was going to cost and insist on being paid as he went? That didn't happen. Again, the whole purpose of this Act is to provide the consumer with information in advance of the work so that the consumer knows how much it's going to cost. It's not a protection for the contractor. It's a protection for the consumer, for the homeowner. It's to provide the homeowner with some ability to take fiscal control over the homeowner's project, not the contractor's project. If the contractor elected to finance the project, then that's how he chooses to run his business. But the Act is not designed to prescribe the conduct of the contractor in running his business. It's designed to protect the homeowner. Again, the issue, the question came up about affirmative defenses, and I know Justice Freeman has expressed some reservations about that in the dissent in the original MD Electrical case. I think the use of this type of statute as an affirmative defense, first of all, it was used in that way in both the Miller case, in the breach of contract claim, and the foreclosure of the mechanics lien claim. It was used as an affirmative defense in the Slepian case, in the Roberts v. Atkins case, and the Smith v. Bogart case, all of those dealing with the Home Repair and Remodeling Act where they permitted Section 30 to be used as a defense to the claims of the contractor who failed to comply with the Act. Secondly, again, this issue does come up in the Fandel case. While we're not arguing the Fandel case, I would point the Court to the concurring opinion by Justice Lytton in that case. He does a much better job than I ever could, certainly within the time frames here, of detailing the history of allowing consumers in consumer protection statutes to use this statute to protect themselves against conduct which is not permitted by the statute. Thirdly, Section 30 can be read for no other purpose except to give a defense to the homeowner. Certainly as originally written in 2000, that's all it was. It is unlawful for the contractor to charge the consumer. It had no other purpose. You didn't need it for Section 35 to be implemented by the attorney general or the state's attorney. You didn't need it for any other purpose. So it can only be used as a defense for the consumer. I really have no other comments unless you have any other questions. Just a factual question. When your client told the contractor that he would be paid in full when the job is completed, was that statement made in response to a request for payment? First of all, I don't know that that was ever a statement made by my client. I don't know that that's even an allegation that my client ever made such a statement. I just don't know that it was ever said that way. My client was never informed, and counsel has admitted that there's no allegation, that they were ever informed as to what my client was going to be asked to pay at the conclusion of the job. At some point, was there a request for additional funds that were denied until the contract was completed? An allegation in the complaint is that at some point the contractor was informed that they wouldn't be paid until the completion of the job. That's not the same thing as saying that they knew what it was. Any evidence otherwise in the record? No. If there are no other questions, then, again, we seek the reversal of the appellate court on its allowing the Quantum Merowith claim and affirming the appellate court on the dismissal of both the offensive oral contract claim and the mechanic lien foreclosure count. Thank you. Thank you, counsel. Case 109-156.